UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Dr. Ramu Subbramanian

       Plaintifs,                           Case No. 1:12cv701

       v.                                    Judge Michael R. Barrett

Cincinnati Children's
Hospital Medical Center,

       Defendant.

## OPINION & ORDER

This matter is before the Court upon Defendant Cincinnati Children's Hospital Medical Center's Motion to Dismiss. (Doc. 4.) Plaintiff Dr. Ramu Subbramanian filed a Response. (Doc. 11). Defendant filed a Reply. (Doc. 12).

### I. BACKGROUND

Plaintiff was formerly employed by Defendant in the Department of Pediatrics. (Doc. 1, ¶ 1). Plaintiff is an Indian male who practices the Hindu faith. (Id.) Plaintiff claims that in July of 2011, one of Defendant's directors, Dr. Margaret Hostetter, prevailed upon Defendant to withdraw Plaintiff's employment contract renewal. (Id., ¶ 7). Defendant terminated Plaintiff on August 25, 2011. (Id., ¶ 8).

Plaintiff claims that Dr. Hostetter's actions were motivated by discriminatory animus toward Plaintiff because of his national origin and/or religion, rather than any legitimate reason. (Id., ¶ 9). Plaintiff claims that Dr. Hostetter's bias was influenced and exacerbated by a culture at the hospital which was hostile toward Asians, and non-Christians. (Id., ¶ 10). Plaintiff explains that this religiously-intolerant and racially-

hostile environment was supervised and condoned by Dr. Hostetter. (Id., ¶ 16).

Plaintiff claims that the discriminatory culture was promoted primarily by Defendant's employee, Monica McNeal. (Id., ¶ 11). Plaintiff explains that his termination and the termination of two other non-Christian Ph.D's of Asian descent led to scientific contributions, grant funding and resources which benefitted McNeal. (Id.)

As one example of the discriminatory culture, Plaintiff claims that Defendant regularly convened HR meetings to address internal issues related to "working together." Plaintiff claims that among the topics of discussion were claims by non-Asian employees that their colleagues of Asian descent were "dirty" in the lab and "smelled of soy sauce." (Id., ¶ 12). As another example, Plaintiff claims that upon returning from a visit to India, McNeal asked Plaintiff why "your people have nothing inside their houses, which are more like shacks, and how can they sleep on floors paved with cow dung?" (Id., ¶ 13). Plaintiff explains that another colleague told Plaintiff "not only Pakistanis, you know Indians can be terrorists . . . they caught this Indian guy who was selling missiles!" (Id., ¶ 14). Plaintiff also claims that several colleagues would make evangelical suggestions, such as warning Plaintiff with statements that began "when the judgment day comes . . ." (Id., ¶ 15). Plaintiff claims that these colleagues would also comment "I just don't get how that works, worshiping multiple gods" (referring to Plaintiff's Hindu faith). (Id.)

Plaintiff brings claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. for national origin and religious discrimination. Plaintiff also brings state law discrimination claims under Ohio Revised Code § 4112, as well as claims for promissory estoppel, breach of the duty of good faith and fair dealing and

2

intentional infliction of emotional distress.

Defendant's Motion to Dismiss only addresses Plaintiff's claim for intentional infliction of emotional distress.

## II. ANALYSIS

### A. Motion to Dismiss Standard

When reviewing a 12(b)(6) motion to dismiss for failure to state a claim, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

### B. Intentional infliction of emotional distress

Under Ohio law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct; (2) of intentional or reckless character; and (3) that causes severe emotional distress. *Yeager v. Local Union 20*, 453 N.E.2d 666, 671 (1983) (abrogated on other grounds by *Welling v. Weinfeld*, 866 N.E.2d 1051 (2007)).

Defendant argues that Plaintiff fails to state a claim for intentional infliction of

emotional distress because none of the alleged statements were made by a supervisor or decision-maker.

Plaintiff's intentional infliction of emotional distress claim is based upon the statements of McNeal and other co-workers.[1] "Ohio has traditionally held that the employer may be liable only if the offending co-worker's acts are attributable to the employer under the doctrine of *respondeat superior*." *Baab v. AMR Servs. Corp.*, 811 F. Supp. 1246, 1264 (N.D. Ohio 1993) (citing *Miller v. Reed*, 499 N.E.2d 919 (Ohio Ct. App. 1986); *Hester v. Church's Fried Chicken*, 499 N.E.2d 923 (Ohio Ct. App. 1986)). Under Ohio law, "in order for an employer to be liable under the doctrine of *respondeat superior*, the tort of the employee must be committed within the scope of employment. Moreover, where the tort is intentional . . . the behavior giving rise to the tort must be 'calculated to facilitate or promote the business for which the servant was employed.'" *Byrd v. Faber*, 565 N.E.2d 584, 587 (Ohio 1991) (quoting *Little Miami R. Co. v. Wetmore*, 19 Ohio St. 110, 132 (Ohio 1869)). Therefore, "'an intentional and wilful attack committed by an agent or employee, to vent his own spleen or malevolence against the injured person, is a clear departure from his employment and his principal or employer is not responsible therefor.' . . . In other words, an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business." *Id.* at 588 (quoting *Vrabel v. Acri*, 103 N.E.2d 564 (Ohio 1952)).

The Court finds that Plaintiff's allegations do not establish liability on the part of Defendant under the doctrine of *respondeat superior*. In his Complaint, Plaintiff alleges

---

[1]In his Complaint, Plaintiff claims that "the religiously-intolerant and racially-hostile environment" was supervised and condoned by Dr. Hostetter. (Doc. 1, ¶ 16). However, Plaintiff has not argued that his claim for intentional infliction of emotional distress is based on this allegation.

4

that McNeal and other co-workers made discriminatory comments, but did not allege that these comments were calculated to facilitate or promote Defendant's business of operating a hospital. However, in his Response to Defendant's Motion, Plaintiff explains that McNeal and the other co-workers "made such xenophobic comments in a misguided and unlawful attempt to promote Defendant's business." (Doc. 11, at 6).

On their face, the comments appear to be nothing more than "intentional and willful attack[s]" by McNeal and the other co-workers "to vent [their] own spleen[s] or malevolence" against Plaintiff. Because these comments are a clear departure from their employment, Defendant is not responsible for them. Even if the Court were to accept the allegation that McNeal and the other co-workers believed that an all Christian, non-Asian workforce would facilitate or promote the business of the hospital, the Court would still find that Plaintiff's claim fails.

Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" and "liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager,* 453 N.E.2d at 671 (quoting Restatement of the Law 2d, Torts (1965) 73, Section 46). Accordingly, this Court has explained that even though "repeatedly asking when an employee will resign, joking about her in the office, retaining her personal possessions after she was discharged, and repeatedly inquiring into an employee's religious beliefs reasonably would be upsetting to the employee, such conduct also does not rise, as a matter of law, to the level of 'extreme' and 'outrageous.'" *Hartley v. Dayton Computer*

*Supply*, 106 F. Supp. 2d 976, 982 (S.D. Ohio 1999) (citing *Slone v. Martin Marietta Energy Sys.*, No. 95–4182, 1997 WL 139794 (6th Cir. Mar. 26, 1997)); *see also Baab v. AMR Servs. Corp.*, 811 F. Supp. at 1269 ("to say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement.") (citing *Anthony v. TRW, Inc.*, 726 F.Supp. 175, 181 (N.D.Ohio 1989) ("Ohio courts have stringently applied the intentional infliction standards in employment actions.")).[2]

Plaintiff also claims that the comments of his co-workers, in combination, created a culture at the hospital which was hostile toward Asians and non-Christians. Plaintiff alleges that this culture led to his termination, along with two other non-Christian Ph.D's of Asian descent. In his Complaint, Plaintiff alleges: "In all three cases, Ms. McNeal was the ultimate beneficiary of the scientific contributions, grant funding and resources attributable to these individuals following their terminations." (Doc. 1, ¶ 11). In his Response to Defendant's Motion, Plaintiff explains that "[u]pon termination of the Plaintiff, and other Asian PhDs, McNeal was able to secure additional grant funding to support the Defendant." (Doc. 11, at 6).

The Court concludes that the disparity in these allegations does not make a

---

[2]This Court has collected some examples of allegations of severe conduct which have fallen short of establishing extreme and outrageous conduct:

> *Wolfe v. Thermo Fisher Scientific, Inc.*, No. 08–933, 2009 WL 1255023, at *l–3 (S.D.Ohio May 4, 2009) (employer falsely imprisoning plaintiff for four hours with no food or water while interrogating, intimidating, harassing, and embarrassing her was insufficiently extreme or outrageous); *Rubin v. Ford Motor Co.*, No. 04–836, 2006 WL 2128934, at *5–6 (S.D. Ohio July 27, 2006) (finding employer's "intentional, offensive and unjustified pattern of conduct (both verbal and physical)," including poking and swearing at plaintiff, to be insufficiently extreme or outrageous); *Hill v. Village of West Lafayette*, No. 95 CA 27, 1996 WL 487943, at *4–6 (Ohio Ct.App. May 24, 1996) (employer's false disciplinary charges and defamatory conduct against plaintiff insufficiently extreme or outrageous).

*McDaniel v. PNC Bank*, 2:11-CV-0683, 2012 WL 368066, *3 (S.D. Ohio Feb. 3, 2012).

difference because neither scenario supports a claim for intentional infliction of emotional distress.  If funding became available after Plaintiff's termination and benefitted McNeal only, the acts of McNeal and others did not facilitate or promote Defendant's business.  On the other hand, if the termination of Plaintiff and the other employees allowed for additional funding for Defendant, "an employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more.  If such were not true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress."  *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999) (citing *Baab v. AMR Services Corp.*, 811 F.Supp. 1246, 1269 (N.D.Ohio 1993)); *see also Moore v. Impact Cmty. Action*, 2013 WL 3873976, *4 (Ohio Ct. App. July 23, 2013) ("evidence of a hostile work environment is not necessarily sufficient to support a claim for intentional infliction of emotional distress").  While Plaintiff is free to prove that his termination was discriminatory, Plaintiff cannot base his claim for intentional infliction of emotional distress upon this termination alone.

### III.　CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss (Doc. 4.) is **GRANTED**.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　*s/Michael R. Barrett*
　　　　　　　　　　　　　　　　　　　JUDGE MICHAEL R. BARRETT